Your Honours, may it please the court, Helen Parsons is the petitioner in this matter. Initially, I would like to let the court know that we will not be arguing a couple of the arguments put forward by Mr. Matemu who did the briefing. Section B1 of his brief on the issue of oral notice. I believe and agree with Mr. Anderson that there is no transcript typically as part of these proceedings. So we would abandon the oral notice argument as being without merit. Prior briefing counsel also addressed the merits of petitioner's claim. The Board of Immigration Appeals did not reach that as part of its decision in this case. So I don't believe that the merits of petitioner's asylum claim is properly before this court because it wasn't taken care of at the appeal to the BIA. There are two issues that I would like to focus on. The first is the issue that the court raised in its order just a few days ago concerning jurisdiction. And then I would like to briefly address the issue of tardiness versus failure to appear as time allows and as the questions allow. On jurisdiction, this court requested participants and the parties to address whether this court has jurisdiction to review an asylum only proceedings. Again, initially, I would note that briefing counsel referred extensively to petitioners being in removal proceedings. Clearly, they were not. And I do not stand by any statements in the briefing that these folks... Okay, so since this wasn't an asylum only proceeding, do we have jurisdiction to hear it? Yes, Your Honor. And I refer you partly to footnote one on page two of respondents brief and also to their 28-J letter, which I will let opposing counsel raise. But every court, every circuit that has looked at this question of whether asylum only proceedings allow for review by this court have answered that in the affirmative. Not always for quite the same reason, Your Honor, but... Even without a formal notice of removal order, correct? Yes, in fact, I could not find another circuit where they addressed the fact that there had been a formal removal. There's no mention of a formal removal order. So in short, my position is, and I believe that the government is in agreement on this, is that the removal order issued in December of 2020 was actually surplusage to this particular question of jurisdiction. You know, the courts that looked at this have, you know, and I've got, we have the 2nd, the 3rd, the 7th, the 8th, the 9th, and the 11th, all of whom have determined that there is jurisdiction. And as I said, they've come to that conclusion slightly different routes, but I think in effect, we're talking about the same thing. The 3rd Circuit in Shehu versus the Attorney General. And so for what reason do you think that we should come to that conclusion? I think simplest is to adopt the language of the 2nd and the 9th and see this as the functional equivalent of a final order of removal. If you go back and you look at what this does, it is the end of the road in a nutshell for this person. There is no further proceeding. At that point, they may be picked up and deported by, as the statute says, any immigration official and removed from the country. To see that as not being the functional equivalent of a final order of removal would deprive the individual, the non-citizen of any avenue for review. And none of the circuit courts have found that that is appropriate. And I say they have found that it's either the 3rd and the 11th have actually considered it to be an actual order of removal, a denial of the denial of asylum only proceedings. The 2nd and the 9th Circuit use the term functional equivalent, which I think is probably the most straightforward because it does what a final order of removal does. It makes somebody susceptible to imminent removal from the United States. It would be fair to say that that's just a suppression, because they've already agreed to removal when they came in. So what difference does an order of removal have in this case? I would say none whatsoever in terms of jurisdiction of this court to review this case. I agree, Judge Floyd, you know, the 7th said it was an implicit order. The 8th Circuit in Zein v. Mukasey didn't even question their jurisdiction, but they went ahead and reviewed an asylum only proceeding. So I'm not sure they didn't make it jurisdictional, but I can find no court that has come to the opposite conclusion. So we don't even have a division amongst the sister circuits. This is a question of first impression here, but I think the fact that we're at the end of the road, I would ask this court to find this, basically the functional equivalent of a final order, and to join the sister circuits in finding that you have jurisdiction over that, over this case. The second area that I want to touch on is the distinction, and this was raised by Mr. Mutemu, the briefing attorney, whether there is a distinction between tardiness and absence in this case. And again, we have an issue of first impression for this court. This is not something that has been raised here before. But again, the sister circuits, the 2nd, 3rd, 5th, 7th, and 9th have all looked at this issue and determined that tardiness is not a failure to appear. I think the interesting case, you know, if I can remind myself, excuse me just one second. Is it an exceptional circumstance? Well, I don't, these cases from the other circuits hold that we don't even have to reach whether it's an exceptional circumstance, because under the plain language of the statute, which refers to a failure to appear, then if somebody appears, you know, the language is fails to appear or does not attend. Those are the two phrases in the relevant statute. And these courts have all held, and there's an enormous breadth to what is considered tardiness under the cases, everything from 15 minutes all the way up to the 7th and the 9th circuits that have found up to two hours. The common factors that these courts look at is whether the court was still in session. And I think that opposing counsel suggests that there's not really evidence in the record of that. I respectfully disagree. This hearing was set for 10 o'clock in the morning. That's AR page 89. Petitioners arrived at 1105, and that's in page 65. So we have him arriving at 1105. Obviously, this is still a morning session of court at 11 o'clock in the morning. So every case has looked at whether the court was still in session. We might be considering something different if court, you know, had finished, but maybe it was the end of the day. Court was closed, but he didn't get there till after the session had finished. So the courts have looked at whether it's a short, and as I say, up to two hours in two circuits. So now he arrived at 1135, you said? According to the affidavit of co-counsel who was there to observe, and that's AR page 65. And where do we find that court was still in session? I think because the court is still in, you know, hadn't gone on for the lunch recess. And the court, the Fifth Circuit has said, even if the judge had, you know, the judge isn't supposed to sit on the bench in an empty courtroom. But even if the judge had left, but was still in the courtroom, and, you know, it's part of that morning session, then it is still during business hours. And I'd like to quote what they said. They said specifically, it doesn't matter whether the IJ was still on the bench or had left the courtroom. And to quote, a man's fate should not turn on whether he had the good fortune of other hearings being scheduled to begin subsequent to his own. In other words, the judge had to stay on the bench because there was somebody coming up imminently. So the fact that the judge may or may not have stepped away from the bench, I think is immaterial because it was still during the business hours of the court. And he, you know, it was an hour and five minutes based on the record. And that's well within the extremes that have been found by other courts. So I would ask the court to... How did the negative assessments by the IJ and the BIA of your client's credibility factor here, if at all? I'm not so sure that it does, the more one thinks about it, Your Honor. You know, one of the circuits found the tardiness, I believe it was the Fifth Circuit. Somebody had gone, they'd taken a wrong turn and got lost. That was hardly a true, you know, compelling reason for not having been there on time. He took the wrong exit off the highway. That's in Alessandro Chavez Gonzales in the Fifth Circuit. He'd misfollowed his GPS, as many of us do. You know, that would not rise to a compelling circumstance. You know, running behind because, you know, your alarm didn't go off would probably fall into that same category. But, you know, your sister circuits have found that tardiness is not a failure to appear. So, and in fact, the respondents did contact the court and say they were on their way. So it's not like the bench didn't know that they were running late as well. It's not like they didn't provide notice. So I think, you know, I would ask the court, you know, as a matter of first impression, to find that there is a distinction between tardiness and a failure to appear completely. As is typically, you know, the norm procedurally in many other types of court. Was this argument exhausted below? I believe it. I believe it was sufficiently raised, your Honor. And as this court noted in Atem K. Bibar in 2020, there's no need for people to use magic words. And that's the quote from the judge. So what words were used below to sufficiently raise it? Well, clearly in the motion to reopen to the immigration judge it was. But when we look at the motion to reopen appeal filed, counsel did ask the court to look at and compare and contrast his tardy but rapid appearance in Charlotte on the hearing day, standing in sharp contrast to an individual willfully failing to appear. So it was raised. Counsel did use in the brief the phrase tardy. The Board of Immigration Appeals did not address the tardiness issue at all. It may well be appropriate to remand to the board to make that decision, particularly in light of the fact that in June of last year, the board issued a published decision, matter of SLH and LBL 28 INN decision 218, holding that the extent of tardiness is a factor that should be taken into account. And obviously, in this case, there was no discussion of the tardiness of of my client. And I see that that brings me perfectly to the end of my time. If there are no further questions, I would hand over to opposing counsel. Thank you, Ms. Parsonage. Thank you, Mr. Anderson. Good morning, Your Honor. May it please the court. Eric Anderson, Attorney General. Petitioners did not appear at their hearing in March of 2018, and their asylum application was denied as abandoned. We know they were not in custody at the time. We know that they had notice of the hearing date. The Board of Immigration Appeals and the immigration judge did not abuse their discretion in concluding that they failed to establish exceptional circumstances and the petition for review should be denied. Like my colleague, I'll also address jurisdiction that the court had flagged in its order. Just the key sequence here is petitioners were admitted under the visa waiver program. They were referred to an immigration judge for their asylum application. All of the asylum application was conducted. They filed their petition in this court, and then CIS issued the VWP removal order against them. With that in mind, I would say the government stands by two aspects of its pending motion to supplement the record. One, the court has authority to take notice of these orders. Two, doing so would not violate the provision in 8 U.S.C. 1252 saying review is based on the administrative record. But to the extent we – I, at the time, thought the reason for filing this motion was you needed to see these orders to establish your jurisdiction. That is not the position of the Attorney General. On consideration after the fact, it is the Attorney General's position that the referral to the immigration judge would not have occurred unless DHS had already concluded that petitioners were removable under the VWP program. And given that there's certainty of the certain outcome, the fact that only the papers had to be completed, the completion of the order is reviewable – I'm sorry, the completion of the asylum-only proceedings is reviewable in this court. I don't know if this court has any other particular questions about jurisdiction. I would say most of the cases are ones in which CIF issues the VWP order earlier in the process. The only one I've become aware of is the Machon decision. I guess I just want to clarify that the government agrees that in asylum-only proceedings, we have jurisdiction to review those because, as opposing counsel said, there's nothing further to be done in asylum-only proceedings. It's the end of the road, so it's not necessary to have that final order of removal because it's effectively already been done. Is that right? There's only one thing to happen at that point – the actual removal, Your Honor. So, having addressed that… Mr. Anderson, you all seem to disagree on the standard of review. Where did you get this facially bona fide standard you're pushing on the court? I mean, wouldn't we be better served to stick with our de novo and substantial evidence test? Your Honor, the standard of review for a motion to reopen is abusive discretion. I'm not sure where this facially legitimate standard is coming from. In my brief, we argue abusive discretion review. I mean, I do know… I mean, generally, Kleindienst v. Mandel is talking about when you're reviewing a consular officer's decision overseas, how that affects the constitutional rights of a U.S. citizen who wants a non-citizen to be admitted to the United States. This is reviewed for does the consular officer offer a facially legitimate reason. It's a very low-level review. I don't believe I cited it in my brief. I believe it's abusive discretion. I think that was my error. I was thinking about the Guzman case and not this one, so there's no problem about the standard of review. Thank you, Your Honor. What we know, then, is that petitioners were served notice of their hearing on March 26, 2018. We know from their own motion after the fact. Their attorney received this notice. He mailed them this notice. In fact, his staff tried calling petitioners on the Friday before the Monday morning hearing and left a voicemail to remind them of the need to appear at their hearing on Monday morning. Nevertheless, they did not appear. Because they were in telephone contact with their lawyer at the time, they offered the excuse, I have a flat tire. Now, an immigration judge is entitled to consider such an account may not be truthful. And in this case, we know this was not truthful because petitioners' explanation after the fact is, I didn't have a flat tire. They then offered the attempt to justify it based on lead petitioners' memory problems associated with alleged medical issues. But they failed to establish either the existence or the severity of these conditions. The only evidence they submitted to support it was notes of talking to a doctor two months after their hearing, which did not include any diagnosis or any statement of the severity of the incapacity or how it would affect their ability to appear at a hearing on time. So I believe, based on credibility and mere assessment of the record, the board did not abuse its discretion. They did not establish exceptional circumstances. To turn to the issue of whether they had to establish exceptional circumstances at all, our first response to that is, no, this was not exhausted. A claim that I showed exceptional circumstances, which is what their brief to the board argued, is not a claim you should reopen and I do not have to show exceptional circumstances. These are different claims. Admittedly, the board has considered issues of how late were you in assessing were these circumstances exceptional? But that's different from the argument being pressed here that the board should reopen without requiring a showing of exceptional circumstances. Even apart from the lack of exhaustion, I would note that this was not well, I would note that the record is devoid of evidence of what happened on this morning in particular. Yes, the hearing was scheduled for 10 a.m. Yes, the affidavit says they showed up at 1105. There is no indication of anything else apart from this. To the fact that it was a morning hearing, this was not a mass hearing where you had an immigration judge with 30 cases before him that he was going to go through one after the other until he updated, perhaps rescheduling cases, etc. This was their merits hearing. It was set aside as several hours on the schedule of the immigration judge. There is no requirement that an immigration judge on the bench with a petitioner is failing to appear, an immigration judge who lacks foresight of the future, there is no requirement that he sit around and wait until they show up. So my first response to this argument is, of course, the lack of exhaustion. But I don't believe there's any basis for finding to apply such a rule here. So I believe I've addressed the government absolutely believes there is jurisdiction. This court can review the asylum only. The board did not abuse its discretion in finding a lack of exceptional circumstances. Mr. Anderson, do you believe that there is a distinction, as your colleague argues, that between failure to appear and tardiness? Failure to appear and tardiness? Is that what you said, Your Honor? Yes, yes. Is there a difference between those two? No, Your Honor, I don't. I mean, I do believe the board does consider how late were you in determining whether we should reopen. But you did fail to appear. The hearing said you had to be there at 10 a.m., the hearing notice, I should say. Whether you are not, you have failed to appear. And again, the immigration judge lacks foresight to know, is this person going to come down the hall five minutes from now, or are they just a fugitive, as it were? So you would argue then that you had a hearing and opposing counsel, and counsel and the client didn't come, or the lawyer. And the other side started their arguments, and they were 15 minutes into it, but the lawyer and the client showed up while it was in progress. That would be failure to appear. Well, if the immigration judge hasn't, well, I mean, I guess I would tie it to, has the immigration judge issued his order yet? I mean, there's very little that DHS has to establish in such a case. It's simply the immigration judge calls the case, DHS says, we would like you to enter an in absentia order, and then it's done. So there's not a big window. So what time was that done? What time was that done? Well, we don't know. He didn't put in any evidence to that effect. Well, that would be evidence that you would have, wouldn't it? Wouldn't the government have that? Since it was done in absentia, how could he do it? I mean, don't you know? Well, his lawyer was there. His lawyer who prepared the motion to reopen was standing in the courtroom. He had personal knowledge of everything that happened, and he could have put it all down in an affidavit, but the record is conspicuously devoid of any evidence apart from the hearing was scheduled for 10 a.m. He appeared at 1105. There's nothing other than that. Was there any evidence that he conveyed the excuse where you now say it's false about a flat time to the court? Well, I say it's false because he said I lied about it. I'm giving you that. I'm giving you that. But is there any evidence that he made that false representation that morning and told the court that? Through the attorney, but we don't know exactly what time this conversation between Mr. The immigration judge over the telephone occurred. What time that was relayed, I do not know. It's even more troubling in this case because you said they had set aside, I'm using your words, I think, two or three hours for just this hearing. You mean somebody tells you it's their last chance to determine whether or not to be deported. You already have three hours set for the hearing, and they tell you through counsel, they're on their way, they have a flat time. And you mean someone said, oh, OK, you know, this case is finished because you're not here. That's what happened. Your Honor, the immigration judge is entitled to doubt the credibility of this, which we know in this case, he would have been absolutely on point to to doubt the credibility of that claim. Well, tell me the reason why he would doubt that claim at that time. Well, because people lie to to avoid. Well, I don't think anybody in the world to the witness stand would have any credibility because people lie in their person. They're not credible. That's most curious argument I've ever heard. Well, Your Honor, the immigration judge, yes, as as many pressing duties. And he had set aside this hearing this morning for Mr. Was the immigration judge ever made aware of the petitioner's arrival at eleven five or any time? They do not make any claim to that effect, Your Honor. So I assume the answer is no, because they don't say they did, Your Honor. All right. So you're just assuming that. If they did make the immigration judge aware, it would have been sensible to tell to say that to record it, to put it in your pleading. Instead, we have a very skeletal factual record of what happened on that day. We have a substantive claim of a medical issue that is not supported by any any indication that Mr. On that day, to such a degree, it affected his ability to attend. We just don't have any evidence and therefore. The immigration judge and board did not abuse their discretion. And unless there's any other questions, we'd ask for the petition to be denied. All right. Thank you, counsel. Ms. Parsons, you have some time reserved. Thank you, Your Honors. Just to address a couple of points. We do have some additional indicia of what happened that morning in the affidavit from staff member as of trial counsel at the administrative record, page 66, in which she details in great detail the back and forth phone calls. The affidavit that I already referred to on page 65 states that when Mr. Salomone arrived at 1105, he was told that an order had already been entered. It is set out in immigration court procedure that once the order has been entered, you have to do a motion to reopen. That is indeed what they did. You know, on terms of whether it's abuse of discretion. Before you go there, counsel, there's something missing here in this. You mean to tell me someone who represented him was in the court on time. Right. Correct. Correct. And they allow someone to enter an order finalizing their case in abstention and didn't walk up to the bench and say, wait a minute, my client is on his way. Flat tire, overslept, whatever. They did nothing. Well, apparently they did. At least that's what I'm apparently you had an affidavit. Why didn't you say so? There is an affidavit and there are the trial attorney states this. Why did you jump to? Why did you jump to? It's already done. Because that's the most important part in real time at 10 o'clock. What did they do and what did they tell? That's what we need. We can't tell from the record exactly the timing, but it is clear from the record that trial counsel informed the judge that his client was on the way for one reason was tardy and was on his way. And the judge, notwithstanding, entered the order. Because by the time petitioners arrived at the court, the order had already been entered. So we know it all happened within that hour. And as you mentioned, that hearing had been set to be a two to three hour hearing, so it was not unreasonable. And I think, you know, I would just in closing ask the court to really look at the NASA rover, the Immigration and Naturalization Service case from the 7th Circuit 171 Federal 3rd 478. That said that this is a two hour late case issuing an in absentia order in that case was a due process violation by the A.G.A., excuse me, the I.J., the immigration judge, and therefore an abuse of discretion by the B.I.A. because of her right, this particular person's right to be. So if it was not a failure to appear, it's a due process violation to issue an in absentia. If it's a due process violation to issue an in absentia, it is a per se and several circuits, the 7th and the 9th have found that it's an abuse of discretion to deny the motion to reopen. There is a strong, strong leaning in favor of allowing asylum applicants to present their case. This court, in an opinion written by Chief Judge Gregory at NKV Bar in 2020, really stresses that the importance of that due process right to present your case. And that sort of adds an extra layer. This was an asylum claim. The merits are not before this court, but he had submitted, and you can see there in the administrative record, he had appeared at multiple hearings. He had submitted page after page after page of corroborating and personal documentation. This was a man who had an asylum case to present whatever the merits. He clearly indicated that. At NKV Bar cites to the BIA's matter of FIFI and cites it at length for the proposition that there is a strong presumption that there is advantage to hearing asylum claims. And anything to do with the asylum, his credibility or the merits of his case should be addressed in an individualized hearing and not in some conclusory manner by a reviewing board like the BIA. And I see that I'm getting out of my time. If there are no further questions, I thank you for listening. Thank you, counsel, both of you for your arguments here today. We can't come down to our normal Fourth Circuit tradition and shake your hands, but no, nonetheless, we appreciate your arguments and being here today virtually. Thank you so much. We wish you to stay well and be safe. Thank you, Your Honor. Thank you. I'll ask the deputy clerk to recess the court until this afternoon. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, Stephanie D. Thacker, Henry F. Floyd